Milton ELLIOTT, Appellant,

v.

The STATE of Texas, Appellee.

No. 03–97–00673–CR.

Court of Appeals of Texas, Austin.

Aug. 31, 1998.

E. G. Morris, Morris & Florey, L.L.P., Austin, for Appellant.

Ronald Earle, Dist. Atty., James Adkins, Asst. Dist. Atty., Austin, for State.

Before YEAKEL, C.J., and ABOUSSIE and JONES, JJ.

YEAKEL, Chief Justice.

We withdraw our original opinion and judgment filed July 16, 1998, and substitute the following.

A jury found appellant Milton Elliott guilty of two counts of felony tampering with a governmental record. Tex. Penal Code Ann. § 37.10(a)(2) (West 1994).[1] The trial court assessed punishment at imprisonment for five years and a $5,000 fine. The court suspended the sentence and placed Elliott on community supervision for five years. Elliott raises two points of error complaining that the evidence was insufficient to sustain his convictions and that his convictions violate the double jeopardy clause of the Texas Constitution. We will overrule these complaints and affirm.

## BACKGROUND

Elliott was president of B & E Environmental, Inc. (B & E), a company engaged in the business of transporting medical waste. As president, Elliott was generally in charge of B & E; he signed company checks and other documents of the company, including insurance applications and financing agreements for insurance premiums. As a transporter of medical waste, B & E was subject to regulation by the Texas Natural Resource Conservation Commission (TNRCC). 30 Tex. Admin. Code § 330.1005 (1997).[2] These regulations included a requirement that B & E provide TNRCC proof that it maintained a specific amount of two types of liability insurance: pollution and automobile. *Id.* § 330.1005(j)(1)(A), (B).

In January 1994, the TNRCC determined that it did not have on file a current proof of insurance from B & E. Kelly McCullum from the Enforcement Department of the Municipal Solid Waste Division of the TNRCC contacted B & E during the week of February 10 regarding the missing proof of insurance. On February 16, McCullum spoke with Ricky Pruitt, the vice-president of B & E. McCullum told Pruitt that if she did not receive current proof of insurance by 5:00 p.m., she would cancel B & E's registration. Pruitt explained that he was in Abilene that day, but promised to take care of it the next morning.

The next morning a copy of a certificate of insurance was faxed from B & E to the TNRCC. Pruitt was in Abilene at the time, but Elliott's secretary, Dana Melvin, testified that Elliott was in the B & E office at the time the fax was sent to the TNRCC. The fax cover sheet identified Melvin as the operator and indicated that the fax was "sent by" Elliott.

After receiving the fax, McCullum contacted the insurance company named on the certificate, Pampa Insurance Agency (Pampa), to verify coverage. Pampa informed McCullum that B & E's previous policies had been canceled and that B & E did not have any current coverage with Pampa. Pampa then contacted Melvin at B & E and requested a copy of the certificate that was faxed to the TNRCC, to which Melvin complied by faxing a copy of the certificate to Pampa. Pampa determined that the certificate was fraudulent and faxed a letter to Elliott suggesting that he investigate the matter. Elliott did not reply to the fax from Pampa.

---

1. The law applicable to this case is that in effect at the time the offense occurred. Subsequent amendments to this statute are not relevant to the issues in this case. We cite to the current code for convenience.

2. *See* comments *supra* note 1.

Elliot was indicted in a four-count indictment. Counts I and III alleged violations of section 37.10(a)(2) of the Texas Penal Code, and Counts II and IV alleged violations of section 37.10(a)(5) of the Texas Penal Code. At trial, Dick Bode of Pampa testified that he regarded Elliott as the person in charge of B & E and that he primarily dealt with Elliott in selling insurance coverage for B & E. Bode also testified that the fraudulent certificate was created from a previous policy written by him for Elliott and that it was altered to appear that B & E had pollution liability and automobile liability insurance for another year. Melvin testified that she observed Elliott alter the expired Pampa policy and that she faxed a copy of the altered certificate to the TNRCC at Elliott's request. She further testified that at the time she faxed the altered certificate to the TNRCC she knew that what she was doing was wrong.[3]

Included in the trial court's charge to the jury was an instruction on accomplice-witness testimony. The charge further instructed that if the jury found Melvin was an accomplice Elliott could not be convicted based on Melvin's testimony unless the jury believed that her testimony was truthful, that her testimony showed Elliott to be guilty as charged in the indictment, that there was other evidence tending to connect Elliott with the commission of the offense charged, and that from all the evidence Elliott was guilty beyond a reasonable doubt. The jury found Elliott guilty of Counts I and III of the four-count indictment.

## DISCUSSION

In his first point of error, Elliott contends that the evidence presented at trial was insufficient to corroborate the accomplice testimony of Melvin under article 38.14 of the Texas Code of Criminal Procedure. Article 38.14 provides:

A conviction cannot be had upon the testimony of any accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it

merely shows the commission of the offense.

Tex.Code Crim. Proc. Ann. art. 38.14 (West 1979). Elliott argues that because Melvin faxed the altered document to the TNRCC *knowing* that what she was doing was wrong, she was an accomplice whose testimony had to be corroborated by other evidence to support a conviction, and that, because the only evidence presented to the jury linking him to the altering of the certificate of insurance was Melvin's testimony, the evidence taken as a whole was insufficient to sustain his convictions. *See Edwards v. State*, 427 S.W.2d 629, 632 (Tex.Crim.App.1968); *see also Gamez v. State*, 737 S.W.2d 315, 323 n. 10 (Tex.Crim.App.1987).

 Elliott contends that the evidence shows that Melvin was an accomplice witness as a matter of law. We disagree. "The evidence in a case determines what jury instruction needs to be given on an accomplice witness." *Gamez,* 737 S.W.2d at 322. If the evidence clearly shows that the witness is an accomplice as a matter of law, the trial court must so instruct the jury. *Id.* Likewise, if the evidence clearly shows that the witness is not an accomplice witness, the court need not instruct the jury that the witness is an accomplice witness. *Id.* If there is a question from the evidence whether a witness is an accomplice witness, however, the trial court is proper to submit that fact issue to the jury to decide. *Id.* "[T]his is sufficient even though the evidence appears to preponderate in favor of the conclusion that the witness is an accomplice witness as a matter of law." *Id.* (citing *Harris v. State*, 645 S.W.2d 447, 454 (Tex.Crim.App.1983); *Brown v. State*, 640 S.W.2d 275 (Tex.Crim.App.1982); *Colunga v. State*, 527 S.W.2d 285 (Tex.Crim.App. 1975); *Gonzales v. State*, 441 S.W.2d 539 (Tex.Crim.App.1969), and cases there cited). The trial judge submitted to the jury the fact issue of whether Melvin was an accomplice witness and further instructed the jury that if the jury so found that Melvin was an accomplice witness, they could not convict Elliott unless other evidence corroborated

---

**3.** Melvin also testified that she committed a crime. However, she does not specifically testify

when she concluded that her actions constituted a crime.

her testimony.[4] Under the facts of this case, we cannot conclude the trial court erred in submitting such fact issue to the jury. *Id.* at 323 (citing *Ward v. State,* 520 S.W.2d 395 (Tex.Crim.App.1975); *Zitterich v. State,* 502 S.W.2d 144 (Tex.Crim.App.1973)).

∎ In light of the evidence, the court's charge, and the jury's verdict, we conclude that the jury could have found that Melvin *was not* an accomplice witness. *See Dears v. State,* 506 S.W.2d 606, 608 (Tex.Crim.App. 1974). "It must be presumed that the jury followed the court's charge and it is well established that evidence must be viewed in the light most favorable to the verdict." *Gamez,* 737 S.W.2d at 324 (citations omitted). If the jury found Melvin *was* an accomplice, there was also ample, corroborating evidence outside of Melvin's testimony tending to connect Elliott with the commission of the offenses charged. Such evidence included, but was not limited to, the following: (1) Elliott was in charge of procuring insurance coverage for B & E; (2) Bode, the Pampa insurance representative, dealt primarily with Elliott on all insurance matters; (3) the fraudulent certificate was created

from a previous policy written by Bode for Elliott; and (4) Elliott failed to respond to Pampa's request for an investigation of the fraudulent certificate. The first point of error is overruled.

In his second point of error, Elliott argues that his convictions on *two* counts under section 37.10(a)(2) of the Texas Penal Code violate the double jeopardy provision of Article I, Section 14 of the Texas Constitution.[5] Elliott contends that he was improperly convicted of multiple counts relating to only *one* fraudulent government record. Elliott was convicted of two counts under section 37.10(a)(2) of the Texas Penal Code, which provides that a person commits an offense if he "makes, presents, or uses any record, document, or thing with knowledge of its falsity and with intent that it be taken as a genuine governmental record." The term "governmental record" is defined as:

(A) anything belonging to, received by, or kept by government for information, including a court record;

(B) anything required by law to be kept by others for information of government; or

---

4. The trial court's instruction regarding accomplice-witness testimony was as follows:

A conviction cannot be had upon the testimony of an accomplice unless the jury first believe [sic] that the accomplice's evidence is true and that it shows the defendant is guilty of the offense charged against him, and even then you cannot convict unless the accomplice's testimony is corroborated by other evidence tending to connect the defendant with the offense charged, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must tend to connect the defendant with its commission.

An accomplice as the word is here used, means anyone connected with the crime charged, as a party to the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the ·other person to commit the offense.

Mere presence alone will not constitute one a party to an offense; and you are further instructed that mere presence of the accused in the company of an accomplice witness shortly

before or after the time of the offense, if any, is not, in itself, sufficient corroboration of the accomplice witness' testimony.

If you find from the evidence that the witness, Dana Sue Melvin, was an accomplice, or if you have a reasonable doubt thereof, as that term has been defined to you in the foregoing instructions, then you are instructed that if you find beyond a reasonable doubt that an offense was committed, you cannot find the defendant, Milton Dick Elliot [sic], guilty upon the testimony of Dana Sue Melvin unless you first believe that the testimony of said Dana Sue Melvin is true and that it shows the defendant is guilty as charged in the indictment; and even then you cannot convict the defendant unless you further believe that there is other evidence in this case, outside the evidence of said Dana Sue Melvin, tending to connect the defendant with the commission of the offense charged in the indictment and then from all the evidence you must believe beyond a reasonable doubt that the defendant is guilty.

5. Article I, Section 14 of the Texas Constitution provides:

No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.

(C) a license, certificate, permit, seal, title, letter or patent, or similar document issued by government, by another state, or by the United States.

Tex. Penal Code Ann. § 37.01(2) (West 1994 & Supp.1998).[6] Elliott asserts that under the plain language of the statute, only a single offense can be committed by the presentation of only *one* tangible thing (i.e., one certificate of insurance). Because he was charged with presenting only one certificate of insurance, Elliott argues, his offense was improperly split into more than one count.

■ In its recent decision in *Vineyard v. State*, the Texas Court of Criminal Appeals instructs that a double jeopardy analysis requires us to decide, as a matter of statutory interpretation, whether Elliott's conduct constituted more than one offense. 958 S.W.2d 834, 837 (Tex.Crim.App.1998). The question of legislative intent requires us to determine whether the legislature intended for the simultaneous presentment of each type of liability insurance (pollution and automobile) to constitute one violation or an "allowable unit of prosecution." *Id.* (citations omitted). The definition of governmental record includes "anything required by law to be kept by others for information of government." Tex. Penal Code Ann. § 37.01(2)(B). Review of the TNRCC regulations applicable to solid waste transportation reveal that evidence of automobile liability insurance is required apart from evidence of pollution liability insurance. 30 Tex. Admin. Code Ann.

§ 330.1005(j)(1)(A), (B). Because automobile liability insurance and pollution liability insurance are listed as separate requirements under the applicable TNRCC regulations, falsified evidence of each may constitute separate offences under section 37.10(a)(2) of the Texas Penal Code.[7] Therefore, we hold the legislature intended in cases like this to make the presentation of evidence of each type of liability insurance an "allowable unit of prosecution." *Vineyard*, 958 S.W.2d at 838. The second point of error is overruled.[8]

## CONCLUSION

We conclude the evidence was sufficient to show Elliott committed the offense of tampering with a governmental record and the convictions do not violate double jeopardy principles. Accordingly, the judgment of conviction is affirmed.

The motion for rehearing is overruled and the judgment of conviction is affirmed.

---

Tex. Const. art. I, § 14.

6. *See* comments *supra* note 1.

7. Elliott's argument focuses on the inclusion of the term "certificate" in the definition of governmental record. *See* Tex. Penal Code Ann. § 37.01(2)(C) (West 1994 & Supp.1998). We conclude, however, that the definition of governmental record encompasses proof of pollution liability and automobile liability insurance required by law to be kept on file with the TNRCC. *See id.* § 37.01(2)(B).

8. In addition to applying the statutory interpretation analysis, the Court in *Vineyard* also applied the test established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *See Vineyard v. State*, 958 S.W.2d 834, 836 (Tex.Crim.App.1998). The Court noted, however, that the *Blockburger* test is not "precisely applicable" to cases where the defendant's conduct violates one statutory provision more

than once. *Id.* at 836 n. 5. Such was the case in *Vineyard* and is the case here. Nonetheless, we conclude that Elliott's convictions do not violate *Blockburger*. If the same act violates one statutory provision more than once, a subsequent prosecution is not barred by double jeopardy if each offense "requires proof of a fact that the other does not." *Id.* at 836 (quoting *Iglehart v. State*, 837 S.W.2d 122, 127–28 (Tex.Crim.App.1992)). To determine the proof required for each offense, we must look to the elements in the charging instrument, rather than the Penal Code provision. *Id.* at 842 (Meyers, J., concurring) (citing *State v. Perez*, 947 S.W.2d 268, 272 (Tex.Crim. App.1997)). Each count in the indictment for which Elliott was convicted requires proof of a matter that the other does not: Count I alleges a representation of pollution liability insurance, Count III alleges a representation of automobile liability insurance. Because the counts do not charge Elliott with the same offense, his convictions on both counts do not violate *Blockburger*.